UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
AT HOUSTON

| | |
|---|---|
| **Daniel Gonzales,** ) | |
| **On behalf of himself and all others** ) | |
| **similarly situated,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Civil No. _____ |
| **v.** ) | |
| ) | **JURY DEMAND** |
| **Brand Energy & Infrastructure** ) | |
| **Services, Inc., f/n/a and/or d/b/a** ) | |
| **Brand Energy, Inc.,** ) | |
| **Brand Services, LLC,** ) | |
| **Brand Energy Solutions, LLC,** ) | |
| **Brand Scaffold Services, LLC, and** ) | |
| **Brand Scaffold Rental and Erection, LLC** ) | |
| ) | |
| **Defendants.** ) | |

**COMPLAINT FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT AND FOR DECLARATORY RELIEF, PERMANENT INJUNCTION, QUANTUM MERUIT RECOVERY OF UNPAID WAGES AND UNJUST ENRICHMENT UNDER TEXAS LAW ON BEHALF OF THE PLAINTIFF CLASS**

Plaintiff Daniel Gonzales ("Plaintiff"), by his counsel, alleges this class action complaint for himself and upon all others similarly situated, based upon: (i) his own personal knowledge; (ii) his own acts and the acts and statements of the above-named defendant in which plaintiff participated directly, including the communications with, representations made, and documentation and information provided to plaintiff by defendant in the ordinary course of business; and (iii) the investigation of his counsel. Counsel's investigation conducted on plaintiff's behalf, included, among other things: (i) a thorough analysis of publicly-available news articles and reports; (ii) a review and analysis of public filings, including but not limited to

1

any by defendant; and (iii) other matters of public record. The allegations as to all other matters are based upon investigation by plaintiff's attorneys and research of the applicable law with respect to the claims asserted herein.

## NATURE OF THE ACTION

1. Plaintiff brings this action as a collective action, on behalf of all persons similarly situated, (the "Collective Group") for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 et seq., by Brand Energy & Infrastructure Services, Inc., f/n/a and/or d/b/a Brand Energy, Inc., Brand Services, LLC, Brand Energy Solutions, LLC, Brand Scaffold Services, LLC, and Brand Scaffold Rental and Erection, LLC ("Brand" or "Defendant"). Specifically, Plaintiff seeks to represent the former and current construction and refinery workers employed by Brand, for failure to compensate for hours worked in excess of 40 hours per week at the applicable federal and state mandated rates. This action also brings claims under Texas law on behalf of a class of employees (the "Texas Class Members") for recovery of unpaid wages owed for work performed, but not compensated.

## JURISDICTION AND VENUE

2. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 insofar as this case is brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA"). The Court has supplemental jurisdiction over the Texas state law claims under 28 U.S.C. §1367 because those claims arise out of the same controversy at issue in the federal claim.

3. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1391(c) because 1) Plaintiff resides in this district, 2) a substantial portion of the

events or omissions giving rise to the claim occurred in this district, and 3) Defendant conducts substantial, continuous and systematic commercial activities in this District.

## THE PARTIES

4.Daniel Gonzales is a citizen of Texas, resides in Houston, Texas, and was employed by Defendant as a worker at refinery facilities between July 2010 and January 2011.

5.Defendant Brand is a Delaware corporation and has its Texas location through Brand Energy Solutions, LLC, which has locations at 10903 Boyt Rd., Beaumont, TX 77705, and at 1830 Jasmine Drive, Pasadena, TX 77503. Its registered agent is The Corporate Trust Company, Corporate Trust Center, 1209 Orange Street, Wilmington, DE 19801.

6.Brand is a diversified provider of specialty multi-craft services to the North American downstream energy infrastructure market. Its portfolio of services offerings includes work access, specialty coatings, abrasive blasting, insulation, corrosion protection, weatherproofing and other related crafts. Brand operates in four key energy sectors: refining, Canadian oil sands, petrochemical and power generation. Further, Defendant serves the infrastructure construction markets throughout North America and in strategic international regions.

7.At all relevant times, Brand was and is legally responsible for all of the unlawful conduct, policies, practices, acts and omissions as described in each and all of the foregoing paragraphs as the employer of Plaintiff, the Collective Group and the Texas Class Members.

8.At all times material to this action, Defendant was the "employer" of Plaintiff within the meaning of 29 U.S.C. §203(d). At all times material to this action, Plaintiff was an "employee" of Defendant as defined by §203(e)(1) of the FLSA, and worked for Defendant within the territory of the United States within three (3) years preceding the filing of this lawsuit.

9. At all times material to this action, Defendant was an enterprise engaged in commerce or in the production of goods for commerce as defined by §203(s)(1) of the FLSA.

10. At all relevant times, the unlawful conduct against Plaintiff, the Collective Group and the Texas Class, as alleged herein was actuated, in whole or in part, by a purpose to serve and benefit Brand to the detriment of its employees. At all relevant times, upon information and belief, the unlawful conduct alleged herein was reasonably foreseeable and knowingly disregarded by Brand and committed under actual or apparent authority granted by Brand such that all of the alleged unlawful conduct is legally attributable to Brand.

11. The overtime wage provisions set forth in § 206 and § 207 of the FLSA apply to Brand. Gonzales and similarly-situated employees are or were not in positions of employment that meet the criteria of any exception or exemption to 29 U.S.C. § 213(a)(1).

## FACTUAL BACKGROUND

12. In July, 2010, Plaintiff Gonzales was hired by Defendant and assigned to the Exxon Mobil ("Exxon") facility in Baytown, Texas (the "Exxon Facility"). Gonzales worked for Defendant as a refinery worker at the Exxon Facility from that time until approximately January 2011.

13. During the course of his employment as a refinery worker at the Exxon Facility, one of Gonzales' primary duties was carpentry. Throughout his employment for the Defendant, Gonzales worked approximately 40 hours per week on most weeks, but also worked overtime hours up to approximately 55 hours in a given week. Gonzales was not classified as exempt from overtime, and was paid at the hourly rate of $12.00, and received $18.00 per hour for overtime. Defendant employed at least 300 employees with job duties and schedules similar to that of Gonzales during his time employed at Brand.

14. While employed by the Defendant at the Exxon Facility in Houston, Gonzales and other similarly situated employees would work the following job schedule during a routine, non-shutdown week:

    a. Between 6:05 AM – 6:10 AM: The employees arrive at the Exxon parking lot using a personal vehicle.

    b. Between 6:07 AM – 6:12 AM: The employees would clear a security checkpoint utilizing a badge at the gated Shuttle Port in the Exxon parking lot.

    c. 6:12 AM – 6:15 AM: The employees would board the Shuttle for transportation to the Exxon Facility.

    d. 6:20 AM: The Shuttle would arrive at the Exxon Facility and employees would exit the Shuttle.

    e. 6:20 AM – 6:30 AM: The Employees would gather their tools, secure their hard hats, safety goggles, ear plugs, earmuffs, and work gloves. Following collection of the necessary tools and safety equipment, the employees would then meet with the supervisor to review worksite safety, hazard analysis, and work assignment.

    f. 6:30 AM - Noon: The employees would then be transported to the worksite for the day and work until lunchtime.

    g. Noon – 12:30 PM: Unpaid lunch.

    h. 12:30 PM – 4:45 PM: After lunch, the employees would return to work at the worksite.

    i. 4:45 PM – 5:00 PM: The employees would leave the worksite for the Shuttle pickup point.

    j. 5:00 PM - 5:15-6:00: The employees would store tools and remove all safety equipment. After storing all the equipment, the employees would wait for the Shuttle. Upon its arrival the employees would board the Shuttle and then transport to the Exxon parking lot.

    k. Five to ten minutes after boarding the Shuttle at the end of the day: The Shuttle arrives at the Shuttle Port and the employees exit the Shuttle. They pass through the security checkpoint at the gated Shuttle Port and then are able to enter the parking lot and return to their personal vehicle.

5

15. Accordingly, Gonzales and other similarly-situated workers were not properly compensated for all the hours worked during a given week. Gonzales and other similarly-situated workers were only compensated for their time beginning with their arrival at their worksite at the Exxon Facility (approximately 6:30 AM during a non-shutdown week), and ending when they departed the worksite at the Exxon main facility to return to the Shuttle pick-up (approximately 5:00 PM during a non-shutdown week). Given that Brand required the schedule as provided above, the Defendant was aware at all relevant times that its workers were not being properly compensated for all Unpaid Work Activities (as defined in Paragraph 20 below) and for all hours worked.

16. Throughout the course of his employment with Defendant, while working at the Exxon Facility during a shutdown work week where the Exxon Facility was non-operational, Brand increased the number of employees on the worksite and increased the working hours for Gonzales and others similarly-situated to approximately 70 hours per week. During a shutdown week, Gonzales and other similarly-situated employees still were required to perform the same start-of-workday and end-of-workday routines described in ¶14.

17. For security reasons, Gonzales and other similarly-situated employees were not permitted to park their personal vehicles at the Exxon main compound, but rather were required by Brand to use the Shuttle. Thus, the employees could not access the Exxon Facility, where their duties were performed, without using the Shuttle.

18. Gonzales and other similarly-situated employees were instructed that failure to board the Shuttle for transport to the Exxon Facility by 6:15 AM, would result in the employee being sent home for the day without pay. Furthermore, employees were warned that repeated failure to board the Shuttle by the 6:15 AM cut-off would result in the termination of their

employment. Thus, Brand was aware that employees were required to arrive at 6:15 AM to utilize the Shuttle, and that there was no alternative method of transportation available to the employees.

19. Due to the volume of employees exiting the main compound at the end of the work day, Gonzales and other similarly-situated employees often were forced to wait for periods of fifteen minutes up to one hour before being able to board the Shuttle. Brand was aware of such conditions at all relevant times because Brand required the employees utilize the Shuttle.

20. Gonzales and others similarly-situated routinely worked well over 40 hours per week. Defendant directed and mandated Gonzales and others similarly-situated to work in excess of 40 hours per week, but knew that these employees were not being properly compensated for time spent performing any of the following tasks (collectively referred to hereinafter as the "Unpaid Work Activities"), which were being performed as part of their job duties under the direction and control of the Defendant:

    a. Badging in at the Shuttle Port security checkpoint and waiting for the Shuttle;

    b. Boarding the Shuttle and transporting to the main compound at Exxon;

    c. Unloading from the Shuttle and entering the Exxon main compound;

    d. Collecting their tools;

    e. Donning their safety gear;

    f. Participating in the safety, hazard analysis, and work instruction meeting;

    g. Leaving the worksite at the end of the workday and returning to the Shuttle pick-up point;

    h. Storing tools;

      i. Doffing safety gear;

      j. Boarding the Shuttle and returning to the Exxon parking lot; and,

      k. Unloading from the shuttle and badging out of the Shuttle Port security checkpoint.

21. Gonzales and all others similarly-situated are entitled to be properly compensated by Defendant for all hours worked at the Exxon Facility, including all overtime pay for the hours worked in excess of 40 per week. As a result of the security badging process and the operation of the Shuttle systems at the Exxon Facility, and the required participation in instructional meetings and donning and doffing of all safety gear, Defendant knew that Gonzales and all others similarly-situated were working hours in furtherance of their duties as Brand employees, as required by Brand, for which they were not being compensated. At all relevant times, Defendant was aware of the FLSA's overtime requirements, the hours being worked by Defendant's employees, but, nonetheless, willfully elected not to pay Gonzales's and the other similarly-situated employees' overtime owed to them. Consequently, Defendant's violations of the FLSA were willful.

22. Brand required Gonzales and all other similarly-situated employees to purchase their own equipment, tools and safety gear, including fire retardant covers, hard hat, safety goggles, ear plugs, earmuffs, work gloves, and steel-toed boots, for use in performing their duties on the worksite. By requiring Gonzales and other similarly-situated employees to purchase their own tools and safety gear for use on the worksite, Defendant unlawfully reduced these employees' compensation in violation of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

23. The First Claim for Relief is properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b).

24. Gonzales worked for Brand as a refinery worker.

25. Gonzales's primary responsibility in this position at Brand was carpentry.

26. Gonzales brings these FLSA claims on behalf of all similarly-situated employees, who worked for Brand at any time from three years prior to the filing of the original Complaint to entry of judgment in this case (collectively the "Class" and each member "Class Members").

27. Defendant treated Gonzales, and upon information and belief, and all other similarly situated construction and refinery workers, similarly in that they refused to properly compensate them for all hours worked for Brand including overtime.  Specifically, Brand failed to provide any compensation to Gonzales and the Collective Group for time spent on Unpaid Work Activities.

28. Since the time spent on the Unpaid Work Activities by the Collective Group would have been in excess of 40 hours of work per week, Defendant failed to compensate Gonzales, and upon information and belief, the Collective Group for the hours worked in excess of 40 per week at a rate of one-and-one-half times their regular rate of pay.

29. Gonzales and the Collective Group do not qualify as exempt employees, as defined by the FLSA or the applicable Federal regulations.

30. Gonzales and the Collective Group are similarly situated, have substantially similar job requirements and pay provisions, and are subject to Defendant's common practices that violate FLSA labor statutes.

31. Defendant has willfully and intentionally engaged in a widespread, continuous pattern and practice of violating the provisions of the FLSA, as detailed herein, by failing to properly compensate Gonzales and the Collective Group for time spent on the Unpaid Work Activities and for failing and refusing to pay the proper hourly wage compensation of current and former employees, including Gonzales, and all others similarly situated, in accordance with § 206 and § 207 of the FLSA.

32. As a result of the Defendant's willful violations of the FLSA in failing to properly compensate its workers for the time spent on the Unpaid Work Activities and any overtime accrued as a result, a three-year statute of limitations from the filing of the original Complaint applies to such violations, pursuant to 29 U.S.C. § 255.

33. Defendant is liable under the FLSA for failing to properly compensate Gonzales and the Collective Group.

34. As a result of Defendant's FLSA violations, Gonzales, as well as the Collective Group, have suffered damages by being denied their earned regular-rate wages and overtime wages in accordance with § 206 and § 207 of the FLSA.

35. Defendant has not made a good faith effort to ensure its compliance with the FLSA with respect to its compensation of Gonzales and other similarly situated present and former construction and refinery workers at the Exxon Facility.

36. As a result of Defendant's unlawful acts, Gonzales and the Collective Group have been deprived of regular rate compensation and overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

37. Notice to the collective class should be issued on the First Claim for Relief under the FLSA.

## CLASS ACTION ALLEGATIONS UNDER FED. R. CIV. P. 23

38. Gonzales brings the Texas state law claims as a class action pursuant to Fed. R. Civ. P. 23, on behalf of all persons who were, are, or will be employed by Defendant to work at the Exxon Facility on or after the date that is four years before the filing of this Complaint (the "Texas Class Period").

39. The Texas Class members are readily ascertainable. The number and identity of the Texas Class members are determinable from the records of Defendant.

40. Each Texas Class member's hours assigned and worked, positions held, and rates of pay are also determinable from Defendant's records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

41. The proposed Texas Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court. Upon information and belief, there are more than 100 members of the Texas Class.

42. The claims of the Plaintiff are typical of those claims which could be alleged by any member of the Texas Class, and the relief sought is typical of the relief which would be sought by each member of the Texas Class in separate actions.

43. The Texas Class members were all subject to the same corporate practices of Defendant, as alleged herein, of failing to pay regular wages and overtime compensation. Defendant's policies and practices at the Exxon Facility affected all Texas Class members similarly, and Defendant benefited from the same violations and wrongful acts as to each Texas

Class member.  The Plaintiff and other Texas Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures.

44. The Plaintiff is able to and will fairly and adequately protect the interests of the Texas Class and has no interests running antagonistic to the class.  The Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

45. A class action is superior to other available methods for the fair and efficient adjudication of the controversy — particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants as individuals. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

46. The adjudication of individual litigation claims would result in a great expenditure of court and public resources.  Treating the claims as a class action would result in a significant savings of these costs.  The prosecution of separate actions by individual members of the Texas Class would create the risk of inconsistent and/or varying adjudications with respect to the individual members of the Texas Class, establishing incompatible standards of conduct for Defendant and result in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties.  Rather, because all the issues before the Court are common and could be fairly determined in a class action context, the class action is superior to any the other available methods.   In addition, if appropriate, the court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

47. Upon information and belief, Defendant violates the Texas Labor Law and State Department of Labor Regulations. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation, especially those with questions surrounding their legal status. Former employees are hesitant to assert claims because doing so could harm their current employment and future employment prospects. Class actions provide class members who are not named in the complaint some degree of protection through anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

48. There are questions of law and fact common to the Texas Class, which predominate over any questions affecting individual class members, including, but not limited to:

    a. Whether Defendant employed the Plaintiff and the Texas Class within the meaning of Texas law;

    b. What proof of hours is sufficient where Defendant failed in its duty to maintain accurate time records;

    c. What were the policies, practices, programs, procedures, protocols, and plans of Defendant regarding payment of overtime wages for employees at the Exxon Facility;

    d. What were the policies, practices, programs, procedures, protocols and plans of Defendant regarding payment of wages for all hours worked for employees at the Exxon Facility;

    e. Whether Defendant failed and/or refused to pay the Plaintiff and the Texas Class members pay for all hours worked per workweek within the meaning of Texas law;

    f. Whether Defendant failed and/or refused to pay the Plaintiff and the Texas Class members premium pay for hours worked in excess of 40 per workweek within the meaning of Texas law;

g. What are and were the policies, practices, programs, procedures, protocols and plans of Defendant regarding the types of work and labor for which Defendant did not pay the class members at all.

## FIRST CLAIM FOR RELIEF
### (For FLSA Violations)

49. Gonzales hereby realleges and incorporates each and every allegation set forth above as if fully set forth herein.

50. Gonzales, through both information and belief alleges that at all relevant times, Defendant has been, and continues to be, an "employer" engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendant has employed, and continues to employ, the Collective Group as "employee[s]" within the meaning of the FLSA. At all relevant times, Defendant has had gross operating revenues in excess of $500,000.

51. Throughout the statute of limitations period covered by these claims, Gonzales and the Collective Group regularly spent time on Unpaid Work Activities as directed by Brand, but were not properly compensated for such time.

52. Gonzales and the Collective Group do not fall within any exempted class of employees under 29 U.S.C. § 213 from the minimum wage and overtime requirements of the FLSA.

53. At all relevant times, Defendant operated under and continues to operate under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules that willfully fail and refuse to pay the Plaintiff and the Collective Group at the rate mandated by 29 U.S.C. § 206(a)(1).

54. Brand violated 29 U.S.C. § 206(a)(1) by failing to pay Gonzales and the Collective Group for arriving to work early and spending extra time on the Unpaid Work Activities as directed by Brand.

55. At all times relevant, Brand was required under 29 U.S.C. § 207(a)1) to pay all of its workers, including Gonzales and the Collective Group, at least one and one-half the normal rate for time worked in excess of 40 hours per week.

56. Brand violated 29 U.S.C. § 207(a)(1) by failing to properly pay Gonzales and the Collective Group one and one-half times the normal rate for time worked in excess of 40 hours per week, and specifically for time worked on the Unpaid Work Activities.

57. The extra time that Gonzales and the Collective Group spent at work on the Unpaid Work Activities was neither preliminary nor postliminary activity.  To the contrary, it was part and parcel of Gonzales' and Collective Group's principal employment activity for Brand, as directed specifically by Brand.

58. Brand has knowingly and willfully withheld Gonzales' and the Collective Group's wages in violated of 29 U.S.C. § 215(a)(2).

59. Gonzales and the Collective Group have a private right of action against Brand under 29 U.S.C. § 216(b) for the amount of their unpaid minimum wages, overtime wages and an additional equal amount as liquidated damages.

60. Upon information and belief, Brand possesses records reflecting the hours worked by Gonzales and the Collective Group throughout the relevant period.  These records will clarify the amount of damages during discovery.

61. Gonzales and the Collective Group seek damages in the amount of their respective unpaid regular and overtime compensation, liquidated (double) damages as provided

by the FLSA for overtime violations, attorneys' fees and costs, injunctive relief requiring Defendant to cease and desist from its violations of the FLSA described herein and to comply with the FLSA, and such other legal and equitable relief as this Court deems just and proper.

### SECOND CLAIM FOR RELIEF
### (For Declaratory Judgment)

62. Gonzales hereby realleges and incorporates each and every allegation set forth above as if fully set forth herein.

63. Brand has knowingly and willfully withheld Gonzales' and the Collective Group's wages in violation of 29 U.S.C. § 215(a)(2).

64. On information and belief, Brand denies that it has violated the FLSA by failing to compensate employees for time spent on the Unpaid Work Activities.

65. This gives rise to an ongoing factual and legal controversy between the parties, making declaratory relief appropriate.

66. The Court has power under 28 U.S.C. § 2201(a) and Fed. R. Civ. P. 57 to declare the rights of the parties with respect to Brand's timekeeping and payroll practices at the Exxon Facility.

67. All persons with an interest in this matter have been made parties or will be given the opportunity to join as plaintiffs, so declaration will not prejudice the rights of any interested persons.

68. The Court should declare that Brand violated the FLSA and continues to violate the FLSA by denying Gonzales and the Collective Group for time worked and overtime. The Court should declare that Brand must compensate Gonzales and the Collective Group, at the appropriate rates mandated by law, for time spent on the job on the Unpaid Work Activities.

## THIRD CLAIM FOR RELIEF
### (For Permanent Injunction)

69. Gonzales hereby realleges and incorporates each and every allegation set forth above as if fully set forth herein.

70. Brand has knowingly and willfully withheld Gonzales' and the Collective Group's wages in violated of 29 U.S.C. § 215(a)(2).

71. Pursuant to 29 U.S.C. § 217, the Court should enter a permanent injunction prohibiting Brand from withholding wages due to its employees under the FLSA.

## FOURTH CLAIM FOR RELIEF
### (Class action under Texas law For quantum meruit recovery of unpaid wages on behalf of the Class)

72. Gonzales hereby realleges and incorporates each and every allegation set forth above as if fully set forth herein.

73. Brand had an implied agreement with Gonzales and the Texas Class to pay them wages for the benefit of their labor at the Exxon Facility, which Brand received and knowingly accepted.

74. Gonzales and the Texas Class are entitled to recover in quantum meruit from Brand all non-payment for the services they rendered at the Exxon Facility, as it would result in an unjust enrichment to Brand for them to have benefited by the work of the Texas Class without paying the proper wages.

75. Gonzales and the Texas Class furnished Brand with valuable services undertaking for its benefit, *i.e.* their labor, at the Exxon Facility, which Brand accepted.

76. Gonzales and the Texas Class of employees which worked for Brand at the Exxon Facility were notified and had a reasonable expectation that they would be paid hourly and overtime wages for all time spent providing their labor to Brand at the Exxon Facility.

77. Although Gonzales and the Texas Class have provided hourly labor to Brand at the Exxon Facility, Brand has knowingly and willfully refused to pay Gonzales and the Texas Class for all hours worked, and have unreasonably withheld Gonzales' and other Texas Class members' wages.

## FIFTH CLAIM FOR RELIEF
### (Unjust enrichment on behalf of the Class)

78. Gonzales hereby realleges and incorporates each and every allegation set forth above as if fully set forth herein.

79. Gonzales and the Texas Class supplied Brand with valuable services undertaking for its benefit, *i.e.* their labor, at the Exxon Facility, which Brand received and knowingly accepted, under circumstances which would render it unjust for Brand not to pay Gonzales and the Texas Class the full value of that labor.

80. As a result, Brand has been unjustly enriched in this matter.

81. Gonzales and the Texas Class have no remedy or recovery against any other source.

82. Gonzales and the Texas Class are entitled to recover in equity from Brand all non-payment for the services they rendered at the Exxon Facility.

## PRAYER FOR RELIEF

**WHEREFORE**, Gonzales, individually and on behalf of all other similarly situated persons pray for the following relief:

A. Designation of Gonzales as representative of the Collective Group as to the FLSA Collective Action;

B. Designation of Gonzales as representative of the Texas Class as to the Class Action allegations under Texas law;

C. Declaratory judgment that the practices complained of herein are unlawful under FLSA;

D. Certification of this action as a collective action pursuant to the FLSA § 216(b);

E. Certification of the Texas Class pursuant to Fed. R. Civ. Pro. 23;

F. An injunction against Defendant and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

G. an award of damages, according to proof, including unpaid wages and liquidated damages pursuant to 29 U.S.C. § 201 *et seq*., and the supporting United States Department of Labor regulations;

H. recovery in quantum meruit for all unpaid wages earned by the Class;

I. Penalties available under applicable law;

J. Pre- and post-judgment interest, as provided by law;

K. Attorneys' fees and costs; and

L. Such other relief as this Court shall deem just and proper.

Dated: May 25, 2012                              Respectfully Submitted,


OF COUNSEL:                                      /s/ Patrick M. Flynn
Patrick M. Flynn, P.C.                           Patrick M. Flynn
1225 North Loop West, Suite 1000                 Texas State Bar No. 07199200
Houston, TX 77008                                1225 North Loop West, Suite 1000
(713) 861-6163  Fax: (713) 961-5566              Houston, TX 77008
                                                 (713) 861-6163  Fax: (713) 961-5566
                                                 pat@pmfpc.com

                                                 Attorney in Charge for Gonzales and
                                                 The Collective Group and Texas Class

| | |
|---|---|
| OF COUNSEL:<br><br>BRANSTETTER, STRANCH &<br>JENNINGS, PLLC<br>227 Second Avenue North, 4th Floor<br>Nashville, Tennessee 37201-1631<br>Telephone: (615) 254-8801<br>Facsimile: (615) 255-5419 | /s/ James G. Stanch                              *<br>James G. Stranch, III (TN #2542)<br>Gerard Stranch, IV (TN #23045)<br>Joe P. Leniski, Jr. (TN #22891)<br>Benjamin A. Gastel (TN #23699)<br>BRANSTETTER, STRANCH & JENNINGS, PLLC<br>227 Second Avenue North, 4th Floor<br>Nashville, Tennessee 37201-1631<br>Telephone: (615) 254-8801<br>Facsimile: (615) 255-5419<br>jstranch@branstetterlaw.com<br>gstranch@branstetterlaw.com<br>jleniski@branstetterlaw.com<br>bgastel@branstetterlaw.com<br><br>John G. Emerson<br>Emerson Poynter LLP<br>830 Apollo Lane<br>Houston, Texas 77058<br>Telephone: (281) 488-8854<br>Facsimile: (281) 488-8867<br><br>Scott E. Poynter<br>Christopher D. Jennings<br>William T. Crowder<br>Corey D. McGaha<br>Emerson Poynter LLP<br>The Museum Building<br>500 President Clinton Ave, Suite 305<br>Little Rock, Arkansas 72201<br>Telephone: (501) 907-2555<br>Facsimile: (501) 907-2556<br><br>Adam J. Levitt<br>Wolf Haldenstein Adler Freeman & Herz LLP<br>55 West Monroe St.<br>Suite 1111<br>Chicago, Illinois 60603<br>Telephone: (312) 984-0000<br>Facsimile: (312) 984-0001<br><br>*Attorneys for Gonzales and<br>the Collective Group and Texas Class* |

*signed by permission