IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DANIEL GONZALES, On Behalf       §
of Himself and All Others        §
Similarly Situated,              §
                                 §
                Plaintiff,       §
                                 §
v.                               §        CIVIL ACTION NO. H-12-1718
                                 §
BRAND ENERGY & INFRASTRUCTURE    §
SERVICES, INC. f/k/a and d/b/a   §
BRAND ENERGY, INC.; BRAND        §
SERVICES, LLC; BRAND ENERGY      §
SOLUTIONS, LLC; and BRAND        §
SCAFFOLD SERVICES, LLC,          §
                                 §
                Defendants.      §


**MEMORANDUM OPINION AND ORDER**


Plaintiff Daniel Gonzales brings this action against
Defendants Brand Energy & Infrastructure Services, Inc. f/k/a and
d/b/a Brand Energy, Inc., Brand Services, LLC, Brand Energy
Solutions, LLC, and Brand Scaffold Services, LLC (collectively,
"Brand") for violations of the Fair Labor Standards Act ("FLSA"),
29 U.S.C. § 201, et seq.  Pending before the court is Brand's
Motion to Dismiss and to Compel Arbitration ("Brand's Motion to
Dismiss") (Docket Entry No. 28).  For the reasons explained below,
the court will grant the motion.

## I.  **Background**

Gonzales alleges that he was employed by Brand as a refinery worker from July of 2010 until January of 2011.[1]  Gonzales alleges that during his employment he and other Brand employees regularly worked overtime hours for which they were not properly compensated.[2]  On the basis of these allegations Gonzales brings causes of action for violations of the FLSA, quantum meruit, and unjust enrichment.[3]  Gonzales seeks certification to proceed with a collective action under 29 U.S.C. § 216(b) and a class action under Federal Rule of Civil Procedure 23.[4]

The pending motion turns on the court's interpretation of two documents relevant to Gonzales' employment.[5]  The "Brand Dispute Resolution Program for Employees" (the "DRP") provides:

---

[1]First Amended Complaint for Violations of the Fair Labor Standards Act and for Declaratory Relief, Permanent Injunction, Quantum Meruit Recovery of Unpaid Wages and Unjust Enrichment Under Texas Law on Behalf of the Plaintiff Class ("First Amended Complaint"), Docket Entry No. 20, ¶ 12.

[2]Id. ¶ 15.

[3]Id. ¶¶ 49-82.

[4]Id. ¶¶ 23-48.

[5]Both parties also address whether arbitration is required pursuant to documents that relate to Gonzales' prior employment with Brand in 2006.  Brand's Motion to Dismiss, Docket Entry No. 28, pp. 2-3; Plaintiff's Opposition to Motion to Dismiss and Motion to Compel Arbitration ("Plaintiff's Opposition"), Docket Entry No. 31, pp. 2-4.  Because the First Amended Complaint refers to only one period of employment during which the alleged violations occurred, July of 2010 to January of 2011, and because neither party has shown why documents from Gonzales' 2006 employment would be relevant, the court will consider only the 2010 documents.

**STEP FOUR - ARBITRATION**

If the dispute has not been resolved in Steps One or Two, or mediation has not succeeded, the exclusive, final and required method to resolve covered claims, that you would have a right to litigate in court, is through binding arbitration.   Either   you   or   Brand   may   request arbitration.   While you do not have to proceed through each of the options in their exact numerical order, the Program is designed with multiple steps to maximize the possibility of resolution prior to arbitration.   Any employment and/or personal injury claim arising out of or relating to Brand and employees at-will employment or other disputes covered in this Program, which have not been   resolved   through   Steps   One,   Two   or   Three (Mediation), **shall be governed by the Federal Arbitration Act (FAA)** and resolved by final, binding arbitration administered by the American Arbitration Association under its current Employment Rules, and judgment upon the award rendered by the arbitrator(s) may be entered by any court having jurisdiction thereof.

. . . .

**Amendments/Termination**
This Program does not constitute an employment contract and Brand may amend or modify the Program as needed. However, no amendment shall apply to a dispute of which Brand had notice of intent to arbitrate on the date of the amendment.   Amendments will be in force upon acceptance by AAA.   Brand may terminate this Program at any time but termination shall not be effective for any dispute which arose prior to the date of termination or until ten (10) days after reasonable notice is given to all employees.   These rules for the Program, and any amendment of them, shall apply in the form in effect at the time the demand for arbitration or the AAA receives submission of the claim.[6]

On July 9, 2010, Gonzales signed the "Brand Dispute Resolution

Program Acknowledgement" ("DRP Acknowledgement"), which states:

I have received, read and understand the Brand Dispute Resolution Program for Employees.  I also understand and agree that as a condition of my at-will employment and

---

[6]DRP, Ex. A-2(c) to Brand's Motion to Dismiss, Docket Entry No. 28-1, pp. 5-6.

continued employment, I will submit to and seek to resolve any disputes arising out of or relating to my application or candidacy for employment, employment and/or cessation of employment through the Brand Dispute Resolution Program.  I understand that this Dispute Resolution Program provides for binding arbitration as the exclusive, final and required method to resolve all covered claims that I otherwise have a right to litigate in court.

I acknowledge that I have had sufficient time to review and consider the Brand Dispute Resolution Program, and to ask whatever questions I may have about the Program to the Company or to my private counsel, before signing this acknowledgement form.[7]

Brand filed its Motion to Dismiss and to Compel Arbitration on September 27, 2012, arguing that pursuant to the above-quoted provisions all issues involved in the dispute should be submitted to arbitration.[8]  Brand further argues that Gonzales should be forced to arbitrate individually, not as part of a collective or class action, and that the entire action should be dismissed.[9] Gonzales responded on October 12, 2012, contending that the arbitration agreement is illusory and unenforceable and, in the alternative, that whether Gonzales may arbitrate on a collective or class action basis should be determined by the arbitrator.[10]  Brand replied on October 22, 2012.[11]

---

[7]DRP Acknowledgement, Ex. A-1(c) to Brand's Motion to Dismiss, Docket Entry No. 28-1.

[8]Brand's Motion to Dismiss, Docket Entry No. 28, pp. 4-10.

[9]Id. at 10-13.

[10]Plaintiff's Opposition, Docket Entry No. 31, pp. 4-9.

[11]Defendants' Reply to Plaintiff's Response to Defendants' Motion to Dismiss and to Compel Arbitration ("Brand's Reply"), Docket Entry No. 32.

-4-

## II.   Discussion

### A.   Enforceability of the Arbitration Agreement

#### 1.   Applicable Law

Under the Federal Arbitration Act ("FAA") an arbitration agreement in a contract evidencing a transaction involving interstate commerce is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Underlying the FAA is "the fundamental principle that arbitration is a matter of contract." AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1745 (2011) (internal quotation marks omitted); see Washington Mut. Fin. Group, LLC v. Bailey, 364 F.3d 260, 264 (5th Cir 2004) ("The purpose of the FAA is to give arbitration agreements the same force and effect as other contracts -- no more and no less.").

Accordingly, the first task of a court asked to compel arbitration is to determine whether the parties entered into a binding agreement to arbitrate the dispute.  Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 105 S. Ct. 3346, 3353 (1985); JP Morgan Chase & Co. v. Conegie ex rel. Lee, 492 F.3d 596, 598 (5th Cir. 2007).  Making this determination requires the court to consider two issues:  (1) validity -- i.e., "whether there is a valid agreement to arbitrate between the parties" -- and (2) scope -- i.e., "whether the dispute in question falls within the scope of that arbitration agreement."  Conegie, 492 F.3d at 598.  Since arbitration agreements are matters of contract, the validity and

-5-

scope of such an agreement are governed by state contract law. Morrison v. Amway Corp., 517 F.3d 248, 254 (5th Cir. 2008). If the parties have entered into a binding agreement to arbitrate the dispute, the court must determine whether any federal statute or policy renders the claims nonarbitrable. Conegie, 492 F.3d at 598. The party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity. Carter v. Countrywide Credit Indus., Inc., 362 F.3d 294, 297 (5th Cir. 2004). A court should resolve all doubts concerning the arbitrability of claims in favor of arbitration. Mitsubishi Motors, 105 S. Ct. at 3353-54.

2.   Analysis

Gonzales does not argue that his dispute falls outside the scope of the purported arbitration agreement.[12] Instead, Gonzales challenges the validity of the agreement, arguing that the DRP is illusory because it allows Brand to unilaterally amend or terminate the DRP.[13]   Specifically, Gonzales contends that the DRP's "amendment clause" -- providing that "Brand may amend or modify the Program as needed" and that "no amendment shall apply to a dispute of which Brand had notice of intent to arbitrate on the date of the amendment"[14] -- is illusory because Brand retained the right "to

---

[12]Plaintiff's Opposition, Docket Entry No. 31, p. 5.

[13]Id. at 7-9.

[14]DRP, Ex. A-2(c) to Brand's Motion to Dismiss, Docket Entry No. 28-1, p. 6.

retroactively amend the program for potential disputes that have not been instigated."[15]  Gonzales also argues that the "termination clause" -- providing that "Brand may terminate this Program at any time but termination shall not be effective for any dispute which arose prior to the date of the termination or until ten (10) days after reasonable notice is given to all employees"[16] -- is illusory because Brand was permitted under its terms "to terminate the Dispute Resolution Program and thereby avoid an arbitration."[17]

The parties agree that Texas law governs the issue of validity.[18]  In <u>In re Halliburton Co.</u>, 80 S.W.3d 566 (Tex. 2002), the Texas Supreme Court confronted facts and arguments similar to those now before the court.  An employee in that case argued that a mandatory arbitration clause was illusory because Halliburton, the employer, had retained the right to modify or terminate the program.  <u>Id.</u> at 569.  Rejecting this argument, the Texas Supreme Court relied on two key provisions:  One stated that "no amendment shall apply to a Dispute of which [Halliburton] had actual notice on the date of amendment"; the other stated that any termination of the arbitration program "shall not be effective until 10 days after

---

[15]Plaintiff's Opposition, Docket Entry No. 31, p. 7.

[16]DRP, Ex. A-2(c) to Brand's Motion to Dismiss, Docket Entry No. 28-1, p. 6.

[17]Plaintiff's Opposition, Docket Entry No. 31, p. 8.

[18]<u>Id.</u> at 5; Brand's Motion to Dismiss, Docket Entry No. 28, p. 6.

reasonable notice of termination is given to Employees or as to Disputes which arose prior to the date of termination." Id. at 569-70 (internal quotation marks omitted). Because of this language, the court held that Halliburton could not "avoid its promise to arbitrate" by amending or terminating the agreement. Id. at 570. The agreement was therefore not illusory. Id.

The Fifth Circuit has subsequently referred to the two key provisions in Halliburton as "'Halliburton type savings clauses.'" Carey v. 24 Hour Fitness, USA, Inc., 669 F.3d 202, 206 (5th Cir. 2012) (quoting Morrison, 517 F.3d at 257). In Carey, "[a]s in Morrison," no such clause served to limit the employer's unilateral "ability to make retroactive modifications to the arbitration provision," rendering the agreement illusory. Carey, 669 F.3d at 206. The Carey court reasoned that, under the terms of the arbitration agreement in that case, if an employee "sought to invoke arbitration with the company pursuant to the agreement," nothing would prevent the employer "from changing the agreement and making those changes applicable to that pending dispute if it determined that arbitration was no longer in its interest." Id. In other words, a "Halliburton type savings clause[]" is the sine qua non for any arbitration agreement that allows an employer to amend or terminate an arbitration program.

The relevant provisions in this case are strikingly similar to those in Halliburton. The court concludes that the arbitration agreement between Gonzales and Brand is not illusory because both

the "amendment clause" and the "termination clause" are "Halliburton type savings clauses" that prevent Brand from retroactively modifying or eliminating its arbitration policy. Under the terms of the DRP, if a dispute arises between Brand and an employee, the dispute would be governed by the DRP as it then existed -- not by any subsequently modified DRP.

Gonzales has therefore failed to carry his burden of showing that the arbitration agreement is illusory and invalid. Accordingly, the court concludes that Gonzales and Brand entered into a binding agreement to arbitrate the dispute at issue in this case. The court further concludes that no federal statute or policy renders the claim nonarbitrable. Gonzales will be compelled to arbitrate this dispute.

**B.    Collective or Class Arbitration**

The court now turns to whether Gonzales should be forced to arbitrate his claims individually and not as part of a collective or class action. Brand argues that because the agreement does not "manifest the intention or the consent of the parties to litigate those disputes in a class or collective action framework, [Gonzales'] dispute must be submitted to arbitration as an individual claim."[19] Gonzales takes the opposite view, contending that "based on the plain language of the arbitration agreement, the parties contracted for an arbitration proceeding that included the

---

[19]Brand's Motion to Dismiss, Docket Entry No. 28, p. 12.

-9-

right to proceed on a class or collective action basis."[20]  Gonzales also argues that if the case is submitted to arbitration, an arbitrator -- not the court -- should determine whether Gonzales may proceed on a collective or class action basis.

The Supreme Court has not definitively decided the class arbitration issue.  The court has stated, however, that "procedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide."  <u>Howsam v. Dean Witter Reynolds, Inc.</u>, 123 S. Ct. 588, 592 (2002) (internal quotation marks omitted).  In <u>Green Tree Financial Corp. v. Bazzle</u>, 123 S. Ct. 2402 (2003), a plurality of the Justices[21] held in the Opinion of the Court that whether class arbitration is warranted is such a procedural issue.  <u>Id.</u> at 2407.  As an initial matter the Court noted that the arbitration agreement did not clearly forbid class arbitration.  <u>Id.</u> at 2406.  The <u>Bazzle</u> plurality found that the contract's provision to submit to arbitration "*all* disputes, claims, or controversies arising from or relating to this contract" included the class arbitration question because that issue "relat[ed] to the

---

[20]Plaintiff's Opposition, Docket Entry No. 31, p. 11.

[21]Justice Stevens concurred in the judgment and dissented in part.  Justice Stevens wrote that "[a]rguably" the class arbitra-tion issue should be made by the arbitrator, not the court. <u>Bazzle</u>, 123 S. Ct. at 2408.  But he did not join the Court's opinion in full because he felt that the lower court's decision to require class arbitration was correct as a matter of law and that there was therefore no need to remand the case, as the plurality did, to correct that possible error.  <u>Id.</u>

contract." <u>Id.</u>  Furthermore, according to the <u>Bazzle</u> plurality, the class arbitration question is not whether the parties "*agreed to arbitrate a matter*," which is a substantive question for the court. <u>Id.</u>; see <u>Mitsubishi Motors</u>, 105 S. Ct. at 3353.  Instead, the question is what "*kind of arbitration proceeding*" the parties agreed to. <u>Bazzle</u>, 123 S. Ct. at 2407.  This matter of contract interpretation, the plurality concluded, is for an arbitrator, not the court, to decide.  <u>Id.</u>  The plurality's holding was subsequently relied upon by the Fifth Circuit. <u>Pedcor Mgmt. Co., Inc. Welfare Benefit Plan v. Nations Personnel of Texas, Inc.</u>, 343 F.3d 355, 359 (5th Cir. 2003) ("[A]rbitrators are supposed to decide whether an arbitration agreement forbids or allows class arbitration.").

The Fifth Circuit addressed this issue more recently, arriving at the same result through different means.  In <u>Reed v. Fla. Metropolitan Univ., Inc.</u>, 681 F.3d 630 (5th Cir. 2012), the parties had explicitly agreed to adopt the American Arbitration Association's ("AAA") Commercial Rules when they entered into their agreement in 2008. <u>Id.</u> at 634.  The court held that consent to any of the AAA's substantive rules also constituted consent to the AAA's Supplementary Rules for Class Arbitration.[22]  <u>Id.</u> at 635.

---

[22]By their terms the Supplementary Rules apply "to any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of the [AAA] where a party submits a dispute to arbitration on behalf of or against a class or purported class, and shall supplement any other applicable AAA rules."  AAA Suppl.
(continued...)

Under Supplementary Rule 3, "the arbitrator shall determine as a threshold matter . . . whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class." AAA Suppl. R. 3. The <u>Reed</u> court therefore concluded that the parties' consent to the Supplementary Rules constituted a clear agreement to allow the arbitrator to decide whether the parties' agreement provided for class arbitration. <u>Id.</u> at 635.

The court concludes that under the relevant precedent the question whether Gonzales may arbitrate on a collective or class action basis is for the arbitrator to decide. Like the agreement in <u>Bazzle</u>, the arbitration agreement here does not explicitly forbid collective or class arbitration. The court has already concluded that the parties agreed to arbitrate this dispute; the arbitrator will decide what "kind of arbitration proceeding" -- i.e., a bilateral arbitration or a collective or class arbitration -- the parties agreed to. While <u>Bazzle</u> and <u>Pedcor</u> involved class actions and not collective actions, the court concludes that <u>Bazzle</u> applies with equal force to both collective and class actions. Both actions raise the same sort of "procedural questions which grow out of the dispute" and "are presumptively not for the judge, but for an arbitrator, to decide." <u>See</u> <u>Howsam</u>, 123 S. Ct. at 592. Through language similar to that used in <u>Bazzle</u>, the parties agreed

---

[22](...continued)
R. 1(a). The Supplementary Rules also apply "whenever a court refers a matter pleaded as a class action to the AAA for administration." <u>Id.</u>

to submit to arbitration "any disputes arising out of or relating to [Gonzales'] application or candidacy for employment, employment and/or cessation of employment."[23]  The court therefore concludes that the parties agreed to submit the collective and class arbitration questions to the arbitrator because those questions constitute disputes that have arisen out of Gonzales' employment.

Reed compels the same result.  The parties in this case agreed to "binding arbitration administered by the American Arbitration Association under its current Employment Rules."[24]  Under Reed the parties therefore also agreed that the Supplementary Rules would apply.  The court concludes that Reed and the Supplementary Rules, like Bazzle, apply with equal force to collective and class actions alike.  Accordingly, the question of collective or class arbitration is for the arbitrator to decide.

## C.  Dismissal

Brand urges the court to dismiss the entire action.[25]  Gonzales does not address the issue of whether the case should be stayed or dismissed upon referral to arbitration.  In the Fifth Circuit, when all issues before the court are arbitrable, the court should dismiss the action.  See Alford v. Dean Witter Reynolds, Inc., 975

---

[23]DRP Acknowledgement, Ex. A-1(c) to Brand's Motion to Dismiss, Docket Entry No. 28-1.

[24]DRP, Ex. A-2(c) to Brand's Motion to Dismiss, Docket Entry No. 28-1, p. 5.

[25]Brand's Motion to Dismiss, Docket Entry No. 28, p. 14.

F.2d 1161, 1164 (5th Cir. 1992).   The court therefore concludes that the proper course is to dismiss the action in its entirety.

### III.   Conclusion and Order

The court concludes that the arbitration agreement entered into by Gonzales and Brand is valid and enforceable.   The issue of whether Gonzales should be permitted to proceed on a collective or class action basis is for the arbitrator, not the court, to decide. Because all of the issues before the court are properly arbitrable, this action will be dismissed.   Accordingly, Defendants' Motion to Dismiss and to Compel Arbitration (Docket Entry No. 28) is **GRANTED**.

**SIGNED** at Houston, Texas, on this the 20th day of March, 2013.

SIM LAKE
UNITED STATES DISTRICT JUDGE

-14-